UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

TONY HAMILTON,

          Plaintiff,                  Case No. 2:24-cv-14

v.                                        Honorable Paul L. Maloney

UNKNOWN WATSON et al.,

          Defendants.
_____/

**OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff has filed a motion for leave to proceed *in forma pauperis*. (ECF No. 2.) Upon consideration of Plaintiff's motion, the Court will grant Plaintiff leave to proceed *in forma pauperis*.

Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Schroeder and Bolton. The Court will also dismiss, for failure to state a claim, Plaintiff's First Amendment retaliation claim, Eighth Amendment claim premised on verbal harassment, Fourteenth Amendment due process claim, and Fourteenth Amendment equal

protection claim against remaining Defendant Watson. The following claims against Defendant Watson will remain in the case: First Amendment mail interference claim, and Eighth Amendment claim premised on Watson spitting and tampering with Plaintiff's food.

## Discussion

### I. Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Marquette Branch Prison (MBP) in Marquette, Marquette County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues Corrections Officer Unknown Watson, Warden Sarah Schroeder, and Grievance Coordinator Quentin Bolton. (ECF No. 1, PageID.2.)

Plaintiff alleges that on June 26, 2023, at 4:05 p.m., Defendant Watson brought a food tray to Plaintiff' cell and asked if Plaintiff was the "same nappy headed ass bitch [who] got into it with [Watson's] brother[-in-]law at Baraga Facility." (*Id.*, PageID.3.) Defendant Watson then stated "it's consequences for that," spit on Plaintiff's food tray, and flung the tray through the food slot. (*Id.*) Defendant Watson then shut Plaintiff's cell door and looked at him from the other side, stating: "You Black nappy headed dog eat that for the night." (*Id.*) Plaintiff states that prior to this date he had problems with Defendant Watson, including racial profiling and general harassment. (*Id.*)

Plaintiff then yelled for a sergeant or lieutenant, stating that he had just been assaulted and that Defendant Watson should not be working around Plaintiff because Plaintiff had filed prior grievances about Defendant Watson "taking [Plaintiff's] mail [and] throwing it away and calling [Plaintiff] racial names and t[a]mpering with [Plaintiff's] food trays." (*Id.*) Plaintiff states that he had previously made it known to Defendant Bolton that he required protection from Defendant Watson because of constant harassment, assaults, and throwing Plaintiff's mail away. (*Id.*,

2

PageID.4.) Plaintiff states that his grievances were all either denied or rejected. Defendant Bolton interviewed Defendant Watson and said that Plaintiff was delusional and none of what he claimed had ever happened. (*Id.*)

Plaintiff wrote kites to Defendants Schroeder, asking for protection from Defendant Watson. Defendant Schroeder did not respond. (*Id.*) On June 28, 2023, Plaintiff stopped Defendant Schroeder during rounds and told her that she would be getting two kites from him regarding being harassed, assaulted, and having his mail interfered with by Defendant Watson. (*Id.*, PageID.4–5.) Plaintiff claims that Defendant Schroeder said, "Tell me why you ignorant color people tell straight faced lies." (*Id.*, PageID.5.) Plaintiff again asserted that Defendant Watson was mishandling his food tray and taking his mail, and Defendant Schroeder told him that was the purpose of the grievance procedure. (*Id.*) Plaintiff told Defendant Schroeder that he previously had problems with Defendant Watson's brother-in-law at Baraga and that Defendant Watson was retaliating against him, but Defendant Schroeder did not take any corrective action. (*Id.*)

On September 27, 2023, Defendant Watson asked Plaintiff "if it [wa]s okay" for them to talk. (*Id.*, PageID.6.) Defendant Watson then asked Plaintiff about "the real reason" he had "got into it" with Defendant Watson's brother-in-law. (*Id.*) Plaintiff told Defendant Watson that he should not be around Plaintiff, and Defendant Watson responded, "You ignorant bitch you thought I'm being sincere right now." (*Id.*) Defendant Watson then spit in Plaintiff's face. (*Id.*) Plaintiff wiped his face and began to yell for a sergeant or lieutenant. Non-party Corrections Officer Rider was just coming on shift and Plaintiff told him what had happened. Corrections Officer Rider stated that he could not do much because it did not happen on his shift. (*Id.*) Plaintiff never got the chance to speak to a sergeant or lieutenant about the matter. (*Id.*, PageID.7.)

3

Plaintiff asserts that Defendant Watson's conduct caused him to suffer emotional distress and that the "garbage" responses from Defendants Bolton and Schroeder show that they were trying to cover-up the misconduct. (*Id.*, PageID.8.) Plaintiff alleges that Defendant Watson's behavior has somehow caused other corrections officers to throw his mail away and threaten him.[1] (*Id.*)

Plaintiff states that Defendants retaliated against him in violation of the First Amendment and subjected him to cruel and unusual punishment in violation of the Eighth Amendment. (*Id.*, PageID.9.) Plaintiff also appears to be asserting that Defendants violated his Fourteenth Amendment equal protection rights. (*Id.*, PageID.10.) The Court also construes Plaintiff's complaint to raise a First Amendment claim and a Fourteenth Amendment claim against Defendant Watson regarding mail tampering. Plaintiff seeks compensatory and punitive damages, as well as declaratory and injunctive relief. (*Id.*)

## II.     Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The

---

[1] In Plaintiff's present complaint, he references an incident on October 5, 2023, at 2:30 p.m., in which Defendant Watson, a sergeant, and other corrections officers severely beat Plaintiff. (ECF No. 1, PageID.8.) Claims regarding the October 5, 2023, assault are set forth in *Hamilton v. Perry et al.*, No. 2:23-cv-244, a civil rights action that Plaintiff filed in this Court in December of 2023. Plaintiff's prior case, *Hamilton v. Perry et al.*, No. 2:23-cv-244, remains pending. Plaintiff may not pursue duplicative actions in this Court. Therefore, any intended claims in the present action regarding the October 5, 2023, assault are subject to dismissal as duplicative.

4

court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.  Defendant Bolton

Plaintiff asserts that Defendant Bolton violated his rights by failing to properly address Plaintiff's grievances, or to grant Plaintiff relief based on the information contained in his grievances. The Court notes that a claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). Section 1983 liability may not be imposed simply

because a Defendant denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Finally, to the extent that Plaintiff complains about Defendant Bolton's failure to provide him a satisfactory response to his grievances, the First Amendment "right to petition government does not guarantee a response to the petition or the right to compel government officials to act on or adopt a citizen's views." *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999). Plaintiff has failed to allege that Defendant Bolton engaged in any active unconstitutional behavior. Therefore, Plaintiff's retaliation, cruel and unusual punishment, and equal protection claims against Defendant Bolton are properly dismissed.[2]

---

[2] In addition, courts repeatedly have held that there exists no constitutionally protected due process right to an effective prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy,* 30 F. App'x 568, 569–70 (6th Cir. 2002); *Carpenter v. Wilkinson,* No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases). Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994).

Nor have Defendant Bolton's actions barred Plaintiff from seeking a remedy for his grievances. *See Cruz v. Beto*, 405 U.S. 319, 321 (1972). "A prisoner's constitutional right to assert grievances typically is not violated when prison officials prohibit only 'one of several ways in which inmates may voice their complaints to, and seek relief, from prison officials' while leaving a formal grievance procedure intact." *Griffin v. Berghuis*, 563 F. App'x 411, 415–16 (6th Cir. 2014) (citing *Jones v. N.C. Prisoners' Labor Union, Inc.*, 433 U.S. 119, 130 n.6 (1977)). Indeed, Plaintiff's ability to seek redress is underscored by his *pro se* invocation of the judicial process. *See Azeez v. DeRobertis*, 568 F. Supp. 8, 10 (N.D. Ill. 1982). Even if Plaintiff had been improperly prevented from filing a grievance, his right of access to the courts to petition for redress of his grievances (i.e., by filing a lawsuit) cannot be compromised by his inability to file institutional grievances, and he therefore cannot demonstrate the actual injury required for an access-to-the-courts claim. *See, e.g.*, *Lewis v. Casey*, 518 U.S. 343, 355 (1996) (requiring actual injury); *Bounds v. Smith*, 430 U.S. 817, 821–24 (1977). The exhaustion requirement only mandates exhaustion of *available* administrative remedies. *See* 42 U.S.C. § 1997e(a). If Plaintiff were improperly denied access to the grievance process, the process would be rendered unavailable, and exhaustion would not be a prerequisite for initiation of a civil rights action. *See Ross v. Blake*, 578 U.S. 632, 640–44 (2016)

### B.      Defendant Schroeder

#### 1.      Respondeat Superior

Plaintiff asserts that Defendant Schroeder violated his rights when she failed to take action against Defendant Watson following Plaintiff's kites and verbal complaint regarding Defendant Watson's behavior. To the extent that Plaintiff is seeking to hold Defendant Schroeder responsible for the behavior of Defendant Watson, the Court notes that government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). As noted above, a claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). As previously stated by the Court, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

#### 2.      Eighth Amendment

Plaintiff also appears to be claiming that Defendant Schroeder violated his rights under the Eighth Amendment in relation to her comments toward Plaintiff on June 28, 2023. Plaintiff alleges that he spoke to Defendant Schroeder while she was making rounds on June 28, 2023, and that she said, "Tell me why you ignorant color people tell straight faced lies." (ECF No. 1, PageID.5.)

---

(reiterating that, if the prisoner is barred from pursuing a remedy by policy or by the interference of officials, the grievance process is not available, and exhaustion is not required); *Kennedy v. Tallio,* 20 F. App'x 469, 470–71 (6th Cir. 2001).

Plaintiff told Defendant Schroeder that Defendant Watson was "constantly assaulting [him] and spitting in [his] food and throwing [his] mail in the garbage[, and] it is strange how when [Defendant] Watson works in the unit that [Plaintiff is] in [he] never get[s his] food tray handed to [him] properly and [his] mail mysteriously disappear[s]." (*Id.*) Defendant Schroeder told Plaintiff that "was what the grievance procedure [was] for," and that she could not help him. (*Id.*) Defendant Schroeder also stated, "You guys bring a lot of shit on [yourselves]," and walked away. (*Id.*)

Initially, it is noted that an allegation that a prison official used racial slurs, although unprofessional and reprehensible, does not rise to constitutional dimensions. *See Ivey v. Wilson*, 832 F.2d 950, 954-55 (6th Cir. 1987) (per curiam); *Jones Bey v. Johnson*, 248 F. App'x 675, 677-78 (6th Cir. 2007) (citing *Torres v. Cty. of Oakland*, 758 F.2d 147, 152 (6th Cir.1985)) (holding that a prison guard's use of racial slurs and other derogatory language against state prisoner did not rise to level of a violation of the Eighth Amendment); *Williams v. Gobles*, No. 99-1701, 2000 WL 571936, at *1 (6th Cir. May 1, 2000) (concluding that occasional or sporadic use of racial slurs does not rise to a level of constitutional magnitude); *Bell-Bey v. Mayer*, No. 98-1425, 1999 WL 1021859, at *1 (6th Cir. Nov. 3, 1999) (same); *Thaddeus-X v. Langley*, No. 96-1282, 1997 WL 205604, at *1 (6th Cir. Apr. 24, 1997) (holding that verbal harassment is insufficient to state a claim); *Brown v. Toombs*, No. 92-1756, 1993 WL 11882 (6th Cir. Jan. 21, 1993) ("Brown's allegation that a corrections officer used derogatory language and insulting racial epithets is insufficient to support his claim under the Eighth Amendment.").

Defendant Schroeder's use of racial slurs does not rise to the level of a constitutional violation. Defendant Schroeder's conduct, if true, is deplorable. Although harassment and verbal abuse are not condoned by the courts and should not be tolerated by correctional authorities, allegations regarding this type of abuse do not present a constitutional violation. *Ivey*, 832 F.2d at

954; *Hartsfield v. Mayer*, No. 95-1411, 1996 WL 43541, at *2 (6th Cir. Feb. 1, 1996); *Green v. Hill*, No. 94-1851, 1995 WL 764119 at *1 (6th Cir. Dec. 27, 1995).

Nor does Plaintiff state an Eighth Amendment claim against Defendant Schroeder for failure to protect him from Defendant Watson. Inmates have a constitutionally protected right to personal safety grounded in the Eighth Amendment. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). Thus, prison staff are obliged "to take reasonable measures to guarantee the safety of the inmates" in their care. *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984). An officer is liable for another officer's use of excessive force where the defendant "'observed or had reason to know that excessive force would be or was being used' *and* 'had both the opportunity and the means to prevent the harm from occurring.'" *Burgess v. Fischer*, 735 F.3d 462, 475 (6th Cir. 2013) (emphasis in original) (quoting *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *accord Alexander v. Carter ex. rel. Byrd*, 733 F. App'x 256, 265 (6th Cir. 2018); *Partin v. Parris*, No. 17-6172, 2018 WL 1631663, at *3 (6th Cir. Mar. 20, 2018).

As stated above, Plaintiff made a conclusory assertion to Defendant Schroeder that Defendant Watson was "constantly assaulting [him] and spitting in [his] food and throwing [his] mail in the garbage." (ECF No. 1, PageID.5.) Defendant Schroeder told Plaintiff that was the purpose of the grievance procedure and walked away. (*Id.*) Plaintiff does not allege that he filed a grievance following this conversation. Nor does Plaintiff state that he was assaulted in Defendant Schroeder's presence or in the period immediately preceding or following this conversation. Under the circumstances alleged in the complaint, Plaintiff fails to allege facts showing that Defendant Schroeder knew of a substantial risk of harm to Plaintiff, let alone that Defendant Schroeder failed to act despite knowledge of a substantial risk of serious harm to Plaintiff. *Farmer*, 511 U.S. 825,

842. Accordingly, Plaintiff's Eighth Amendment claim against Defendant Schroeder is properly dismissed.

### 3. Retaliation

Plaintiff's retaliation claim against Defendant Schroeder is also properly dismissed. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

The filing of a nonfrivolous prison grievance is constitutionally protected conduct for which a prisoner cannot be subjected to retaliation. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001); *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000). Plaintiff states that he filed grievances regarding Defendant Watson, but he fails to allege facts showing that Defendant Schroeder was aware of those grievances, or that she was motivated by a desire to retaliate against Plaintiff for his use of the grievance system.

Nor does Plaintiff allege that Defendant Schroeder took an adverse action against him which would deter him from engaging in protected conduct. Defendant Schroeder responded to Plaintiff's verbal complaint by stating that was the purpose of the grievance process. Instructing a prisoner to file a grievance in response to a verbal complaint could not deter a person of ordinary

10

firmness from engaging in protected conduct because it does not have any adverse consequences. For these reasons, Plaintiff's retaliation claim against Defendant Schroeder is properly dismissed.

### 4. Equal protection

Plaintiff makes a conclusory assertion that Defendants discriminated against him. The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. Const., amend. XIV; *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985).

The threshold element of an equal protection claim is disparate treatment. *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006). "To state an equal protection claim, a plaintiff must adequately plead that the government treated the plaintiff 'disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis.'" *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011) (quoting *Club Italia Soccer & Sports Org., Inc.*, 470 F.3d at 298)). "'Similarly situated' is a term of art—a comparator . . . must be similar in 'all relevant respects.'" *Paterek v. Vill. of Armada*, 801 F.3d 630, 650 (6th Cir. 2015) (quoting *United States v. Green*, 654 F.3d 637, 651 (6th Cir. 2011)); *see also Nordlinger*, 505 U.S. at 10; *Tree of Life Christian Sch. v. City of Upper Arlington*, 905 F.3d 357, 368 (6th Cir. 2018) ("A plaintiff bringing an equal protection claim must be 'similarly situated' to a comparator in 'all relevant respects.'").

Plaintiff fails to allege facts showing that Defendant Schroeder treated him differently than any other prisoner, much less any other similarly situated prisoner of another race. "[A]n officer's use of a racial epithet, without harassment or some other conduct that deprives the victim of established rights, does not amount to an equal protection violation." *King v. City of Eastpointe*, 86 F. App'x 790, 814 (6th Cir. 2003) (*citing Williams v. Bramer*, 180 F.3d 699, 706 (5th Cir.

11

1999)). Therefore, Plaintiff's equal protection claim against Defendant Schroeder is properly dismissed.

    **C.    Defendant Watson**

        **1.    Eighth Amendment**

Plaintiff alleges that Defendant Watson violated his Eighth Amendment rights by using racial slurs, spitting in Plaintiff's food and at Plaintiff, and throwing Plaintiff's food tray. As noted above, the use of harassing or degrading language by a prison official, although unprofessional and deplorable, does not rise to constitutional dimensions. *See Ivey*, 832 F.2d 950, 954–55 (6th Cir. 1987). For the same reasons that Defendant Schroeder's alleged use of racial slurs did not violate the Eighth Amendment, Defendant Watson's use of racial slurs does not state a claim under the Eighth Amendment.

Plaintiff also asserts that Defendant Watson violated the Eighth Amendment when he spit in Plaintiff's food and on Plaintiff, and when he threw Plaintiff's food tray. Although isolated incidents of spitting and tampering with food may not state a claim, Plaintiff's complaint suggests that Defendant Watson took these actions against Plaintiff on a regular basis. At this stage of the proceedings, taking Plaintiff's factual allegations as true and in the light most favorable to him, the Court concludes that Plaintiff's Eighth Amendment claim against Defendant Watson premised on Watson spitting and tampering with Plaintiff's food may not be dismissed on initial review.

        **2.    Mail Tampering**

            **a.    First Amendment**

Plaintiff claims that every time that Defendant Watson works in Plaintiff's unit, Plaintiff's "mail mysteriously disappear[s]." (ECF No. 1, PageID.5.)

"A prisoner's right to receive mail is protected by the First Amendment." *Knop v. Johnson*, 977 F.2d 996, 1012 (6th Cir. 1992) (citing *Pell v. Procunier*, 417 U.S. 817, 822 (1974)). "Mail is

one medium of free speech, and the right to send and receive mail exists under the First Amendment." *Al-Amin v. Smith*, 511 F.3d 1317, 1333 (11th Cir. 2008) (citing *City of Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 427 (1993)). A prisoner, however, retains only those First Amendment freedoms which are "not inconsistent with his status as a prisoner or with legitimate penological objectives of the corrections systems." *Martin v. Kelley,* 803 F.2d 236, 240 n.7 (6th Cir. 1986) (*quoting Pell*, 417 U.S. at 822); *see Turner v. Safley,* 482 U.S. 78 (1987). Incoming mail has long been recognized to pose a greater threat to prison order and security than outgoing mail. *Thornburgh v. Abbott*, 490 U.S. 401 (1989); *Turner*, 482 U.S. 78.

"[I]solated instances of interference with prisoners' mail" may not rise to the level of a constitutional violation under the First Amendment. *See Johnson v. Wilkinson*, 229 F.3d 1152 (6th Cir. 2000) (citing *Gardner v. Howard*, 109 F.3d 427, 431 (8th Cir. 1997)); *Colvin v. Caruso*, 605 F.3d 282, 293 (6th Cir. 2010) (citing *Johnson* for the holding that "isolated incidents" of interference with prisoners' rights do not rise to the level of a First Amendment violation). However, repeated instances of interference with a prisoner's mail may state a claim. Here, although Plaintiff's complaint lacks specificity as to specific times of mail tampering, his allegation suggest that Defendant Watson regularly interfered with Plaintiff's receipt of his mail. At this stage of the proceedings, Plaintiff's factual allegations must be taken as true and in the light most favorable to him. Applying this standard, the Court will not dismiss Plaintiff's First Amendment mail interference claim against Defendant Watson on initial review.

### b. Fourteenth Amendment Due Process Clause

To the extent that Plaintiff alleges that by throwing away Plaintiff's mail, Defendant Watson deprived Plaintiff of property without due process of law, this claim is barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986). Under *Parratt*, an individual deprived of property by a "random and unauthorized

act" of a state employee cannot maintain a federal due process claim unless the state fails to afford an adequate post-deprivation remedy. If an adequate post-deprivation remedy exists, the deprivation, while real, is not "without due process of law." *Id.* at 537. This doctrine applies to both negligent and intentional deprivations of property, as long as the deprivation was not pursuant to an established state procedure. *See Hudson v. Palmer*, 468 U.S. 517, 530–36 (1984). Plaintiff must plead and prove the inadequacy of state post-deprivation remedies. *See Copeland v. Machulis*, 57 F.3d 476, 479–80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993). The Sixth Circuit has noted that a prisoner's failure to sustain this burden requires dismissal of his § 1983 due process action. *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

Here, Plaintiff fails to allege that his state post-deprivation remedies are inadequate. Plaintiff has available to him numerous state post-deprivation remedies. First, a prisoner who incurs a loss through no fault of his own may petition the institution's Prisoner Benefit Fund for compensation. MDOC Policy Directive 04.07.112, ¶ b (eff. Dec. 12, 2013). Moreover, aggrieved prisoners may submit claims for property loss of less than $1,000.00 to the State Administrative Board. Mich. Comp. Laws. § 600.6419; MDOC Policy Directive 03.02.131 (eff. Oct. 21, 2013). Finally, Michigan law authorizes actions in the Court of Claims asserting tort or contract claims "against the state and any of its departments or officers." Mich. Comp. Laws § 600.6419(1)(a) (eff. Nov. 12, 2013). The Sixth Circuit has specifically held that Michigan provides adequate post-deprivation remedies for deprivation of property. *See Copeland*, 57 F.3d at 480. Plaintiff alleges no reason why a state-court action would not afford him complete relief for the deprivations, either negligent or intentional, of his personal property. Accordingly, an intended Fourteenth Amendment due process claim against Defendant Watson regarding the deprivation of Plaintiff's mail will be dismissed.

**3.** Retaliation

Plaintiff claims that Defendant Watson's conduct was motivated by a desire to retaliate against him for getting "into it" with his brother-in-law. Plaintiff does not explain what getting "into it" entails. As noted above, in order to set forth a First Amendment retaliation claim, a plaintiff must allege that he was engaged in protected conduct. *See Thaddeus-X*, 175 F.3d 378, 394; *Smith*, 250 F.3d 1032, 1037. Plaintiff has failed to allege any specific facts showing that he was engaged in such conduct. Therefore, his retaliation claim against Defendant Watson is properly dismissed.

**4.     Equal Protection**

Plaintiff asserts that Defendant Watson violated his equal protection rights. Plaintiff alleges that Defendant Watson repeatedly called him racial slurs and also subjected him to various forms of harassment, including spitting on him or his food, and throwing his mail into the garbage.

The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. Const., amend. XIV; *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). When a law adversely impacts a "suspect class" such as one defined by race, alienage, or national origin, or invades a "fundamental right," such as speech or religious freedom, the rigorous "strict scrutiny" standard ordinarily governs, whereby such laws "will be sustained only if they are suitably tailored to serve a compelling state interest." *City of Cleburne*, 473 U.S. at 440.

The threshold element of an equal protection claim is disparate treatment. *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006). Further, "'[s]imilarly situated' is a term of art—a comparator . . . must be similar in 'all relevant respects.'" *Paterek v. Vill. of Armada*, 801 F.3d 630, 650 (6th Cir. 2015) (quoting *United States v. Green*, 654 F.3d 637, 651 (6th Cir.

15

2011)). "[T]he comparative [prisoner] 'must have dealt with the same [decisionmaker], have been subject to the same standards, and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the[] [decisionmaker's] treatment of them for it.'" *Umani*, 432 F. App'x at 460 (quoting *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998)). In this action, Plaintiff fails to identify any comparative prisoners. Indeed, besides Plaintiff's vague reference to his membership in a protected class and his conclusory assertion that Defendant Watson's actions violated the Equal Protection Clause, Plaintiff's complaint contains no facts or allegations to support his equal protection claim. *See Iqbal*, 556 U.S. at 678 ("[T]he tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements."). Instead, any allegations of discriminatory treatment are wholly conclusory. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555. Furthermore, even viewing Plaintiff's equal protection claim as a class-of-one claim, the Court would reach the same conclusion because Plaintiff's equal protection claims are wholly conclusory and he has alleged no facts that plausibly suggest that his equal protection rights were violated.

Accordingly, any intended Fourteenth Amendment equal protection claim against Defendant Watson will be dismissed.

## **Conclusion**

The Court will grant Plaintiff leave to proceed *in forma pauperis*. Further, having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Schroeder and Bolton will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, the following claims against remaining Defendant Watson: First Amendment

16

retaliation claim, Eighth Amendment claim premised on verbal harassment, Fourteenth Amendment due process claim, and Fourteenth Amendment equal protection claim. The following claims against Defendant Watson remain in the case: First Amendment mail interference claim, and Eighth Amendment claim premised on Watson spitting and tampering with Plaintiff's food.

An order consistent with this opinion will be entered.


Dated:   March 27, 2024                                        /s/ Paul L. Maloney
                                                                                            Paul L. Maloney
                                                                                            United States District Judge